# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **Joseph & Roxanne Darling**<br>253 Collins Mills Road,<br>West Gardiner, ME 04345<br><br>　　　　Plaintiff,<br><br>v.<br><br>**INDYMAC BANK, F.S.B.,**<br>7667 Folsom Boulevard Suite 101<br>Sacramento CA, 95826<br><br>**WESTERN THRIFT & LOAN**<br>24701 LaPlaza Ste 201<br>Dana Point, CA  92629<br><br>**PAUL MIKHAIL**<br><br>　　　　Defendants. | )<br>)<br>)<br>) **FIRST AMENDED**<br>) **COMPLAINT FOR ACTUAL AND**<br>) **PUNITIVE DAMAGES, INJUNCTIVE**<br>) **RELIEF AND FOR**<br>) **DECLARATORY JUDGMENT ON**<br>) **RESCISSION UNDER**<br>) **TILA,VIOLATIONS OF MAINE'S**<br>) **UNFAIR AND DECEPTIVE PRACTICES**<br>) **ACT, NEGLIGENT**<br>) **MISREPRESENTATION,**<br>) **BREACH OF FIDUCIARY DUTY**<br>) **AND MALICE**<br>)<br>)<br>)<br>) **Case No.:**<br>)<br>) **(JURY TRIAL DEMANDED)**<br>) |

## Preliminary Statement

This Complaint is filed under the Truth and Lending Act, 15 U.S.C. Section 1601 (hereinafter "TILA") to enforce Plaintiffs' right to rescind a consumer credit transaction, to void the IndyMac Bank's security interest in the Plaintiff's home and to recover statutory damages, reasonable attorney's fees and costs by reason of the INDYMAC BANK's violations of TILA and of Regulation Z, 12 C.F.R. 226. The Plaintiffs are also seeking damages for the negligent misrepresentations made by the PAUL MIKHAIL, individually and as an agent for WESTERN THRIFT & LOAN during the consummation of this loan, which in connection with Paul Mikhail/Western Thrift & Loan's acts led the Plaintiffs to enter into a loan that was grossly different then what Paul Mikhail/Western

Thrift & Loan represented causing the Plaintiffs to be slowly stripped of the equity in their home.

## PARTIES

1. Plaintiffs Joseph Darling and Roxanne Darling (hereinafter "the Darlings" or "Plaintiffs"), are individuals and residents of the State of Maine, residing at 253 Collins Mills Road, West Gardiner, Maine.

2. Defendant IndyMac Bank F.S.B. (hereinafter "Indy Mac" or the "Lender") is and was at all times relevant a duly charted national bank, authorized to engage in the mortgage lending business in the State of Maine, with a principal place of business address at 7667 Folsom Boulevard Suite 101, Sacramento, California.

3. Defendant Western Thrift & Loan (hereinafter "Western Thrift & Loan") is and was at all times relevant a Nevada-chartered mortgage broker authorized to do business in the State of Maine, with their principal place of business address at 24701 LaPlaza, Suite 201, Dana Point, California.

4. Defendant Paul Mikhail (hereinafter "Mikhail"), whose address is presently unknown, is sued herein individually and as an agent for Defendant Western Thrift & Loan. Mikhail is and was at all times relevant Plaintiffs' mortgage broker agent, acting with a fiduciary duty to obtain credit on behalf of the Plaintiffs. Western Thrift & Loan and Mikhail, collectively, served as the mortgage broker for Plaintiffs.

## VENUE

5. Venue is proper in this Court insofar as Plaintiffs live in this District and the

subject offenses occurred in this District, pursuant to Title 28 U.S.C. 1391.

## JURISDICTION

6. This Court has jurisdiction over this action, pursuant to Title 28 U.S.C 1331, 1337, Title 15 U.S.C. 1640 and Title 15 U.S.C. 1635. Jurisdiction is invoked pursuant to Title 28 U.S.C. 1367 for violations of 5 M.R.S.A. § 207 and related state-law torts of breach of fiduciary duties, negligent misrepresentations and malice (punitive damages). This Court maintains jurisdiction to grant declaratory judgment relief against the Defendants pursuant to Title 28 U.S.C. 2201.

## JURY TRIAL DEMAND

7. Plaintiffs demand a jury trial respecting all matters so triable.

## FACTS OF THE CASE

8. On or around February, 2005, Plaintiffs went to Western Thrift & Loan and Mikhail in the belief that that Defendants' experience in the mortgage industry would benefit the Plaintiffs in obtaining an extension of credit that the Plaintiff could reasonably sustain considering their financial assets.

9. At the Plaintiff's initial meeting with Western Thrift & Loan and Mikhail, the Plaintiffs informed the Defendants that the Plaintiffs' goals where to pay off their home in a relatively short amount of time and to receive extra cash to invest.

10. At this time, Western Thrift & Loan and Mikhail informed the Plaintiffs that their credit was outstanding and Plaintiffs would qualify for a one-percent loan.

11. Prior to being introduced to Western Thrift & Loan and Mikhail, Plaintiffs' only experience with mortgages was fixed rate loans.

12. At this time and shortly after closing, Western Thrift & Loan and Mikhail represented to the Plaintiffs that this one-percent loan would be the answer to paying off the Plaintiffs' loan early; Western Thrift & Loan and Mikhail specifically stated that the Plaintiffs could pay off their home in twelve to fifteen years if the Plaintiffs only paid an extra two hundred dollars per payment.

13. During the months prior to April 2005, Western Thrift & Loan and Mikhail continued to contact the Plaintiffs in regards to this one-percent loan and, in response to Plaintiffs' inquiries and requests for confirmation, continued to assure the Plaintiffs that the loan truly was a one-percent loan and was not "too good to be true" as cautioned by Plaintiffs.

14. Plaintiffs, in reliance upon Western Thrift & Loan and Mikhail's representations regarding the accelerated pay-off detailed above, and despite their concerns respecting the adjustable rate, decided to have Western Thrift & Loan and Mikhail begin the process of obtaining the one-percent loan which they had promised and represented.

15. At this time, Western Thrift & Loan and Mikhail also represented that they would charge no brokers fees, insofar as this is how they were able to beat out their competition.

16. On or about May 12, 2005, Plaintiffs entered into a consumer credit transaction (hereinafter known as, "the Transaction") with the Lender, Indy Mac, in which the extended consumer credit was subject to a finance charge initially payable to

Indy Mac.

17. The federally-related mortgage loan transaction at the root of this case is a loan covering and secured by real property, which real property then and now was and remains the permanent residence and dwelling of Plaintiffs.

18. On or about May 12, 2005, Plaintiffs received copies of loan documents which included a TILA disclosure form and a so-called Good Faith Estimate, dated as prepared on February 4, 2006.

19. The said TILA disclosure form and the said Good Faith estimate failed to accurately reflect the obligation Plaintiffs were entering into.

20. At that time, Plaintiffs also received for the first time the early ARM disclosure.

21. At this time, Plaintiffs noticed the differences between and among the documents described above and representations made by Western Thrift & Loan and Mikhail, and telephoned Western Thrift & Loan and Mikhail respecting their concerns. The response from Western Thrift & Loan and Mikhail was that they would refund the brokers' fee.

22. At this time, when pressed by Plaintiffs respecting the other discrepancies in the loan documentation, Western Thrift & Loan and Mikhail stated "[that] the Plaintiffs [knew] nothing about loan closing[s]." This reconfirmed to Plaintiffs that the transaction that Plaintiffs were entering into was the same as had been represented to them earlier by Western Thrift & Loan and Mikhail.

23. At closing, Plaintiffs did not realize the effects of the Yield Spread Premium Fee, $6,989.00, and did not realize that same was a brokers' fee, insofar as Western Thrift & Loan and Mikhail had represented that there would be no brokers' fees.

24. On May 13, 2006, Plaintiffs were contacted by Western Thrift & Loan and Mikhail stating there would have to be "more paperwork" signed, which included, *inter alia,* a new TILA disclosure form which more adequately represented the true loan which Plaintiffs were entering into.

25. This communication again raised the concerns of Plaintiff.

26. In response to these further concerns, Western Thrift & Loan and Mikhail reassured Plaintiffs that the loan was the same as they had discussed and represented.

27. During the three-day rescission period, Plaintiffs had several conversations with Western Thrift & Loan and Mikhail respecting their continued concerns.

28. Throughout the three-day rescission period, Western Thrift & Loan and Mikhail continued to reassure Plaintiffs that the loan was as Western Thrift & Loan and Mikhail had represented.

29. When Plaintiffs received their first payment statement, the statement appeared to reflect payment terms different from the terms which Western Thrift & Loan and Mikhail had represented.

30. At this time, Plaintiffs had a further conversation with Western Thrift & Loan and Mikhail respecting their continued concerns.

31. Again, Western Thrift & Loan and Mikhail reassured Plaintiffs that the loan was as Western Thrift & Loan and Mikhail had represented.

32. Due to the foregoing circumstances, Plaintiffs were and remained confused respecting what the actual terms of their loan are, if and to what extent they had or maintain a right to rescind the new loan disclosed to them on May 13, 2006, and

why this one-percent loan did not seem to be reflected in the disclosures provided by Defendants.

## FIRST CAUSE OF ACTION
### (TILA VIOLATIONS AND REQUEST FOR DECLARATORY JUDGMENT ON RESCISSION)

33. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32, above, with the full force and effect as if set forth fully herein.

34. This consumer transaction is subject to Plaintiffs' right of rescission as described by 15 U.S.C. 1635 and Regulation Z 226.23 (12 C.F.R. 226.23).

35. Plaintiffs have a continuing right to rescind the transaction until the third business day after receiving both the proper right-to-cancel notice and all material disclosures, up to three years after the consummation of the transaction.

36. Plaintiffs sent a letter of rescission to Indy Mac on or around July 28, 2006 which was received on July 31, 2006, to which Indy Mac has failed to respond within twenty days, as defined in Regulation Z 226.23 (d).

37. In the course of this consumer credit transaction Indy Mac failed to deliver all "material " disclosures required by the Truth and Lending Act and Regulation Z, including, without limitation upon the generality of the foregoing, the following:

    a. The Lender failed to give the Plaintiff's early ARM disclosures until closing in direct violation of 12 C.F.R. 226.19 (b) which clearly effects the payment schedule and payment fluctuations. 12 C.F.R. 226.23 (3) /48/.

    b. The Yield Spread Premium of $6, 989.06 is not reflected in the APR, scheduled payments amount, or Financed Charge. 12 C.F.R. 226.23 (3) /48/.

7

    c.  Plaintiffs, upon receiving the new TILA disclosures after consummation, did not receive new right-to-rescind notices. 12 C.F.R. 226.23 (b) (1).

    d.  Plaintiffs received two TILA disclosures in a relatively-short duration of time which are in direct conflict with each other.

    e.  Due to Western Thrift & Loan and Mikhail's actions in misleading Plaintiffs respecting the terms of the loan, Plaintiffs were not given disclosures in a clear and conspicuous manner, in which the unsophisticated consumer would understand that they had a right to rescind the transaction, nor what the actual terms of the loan were.

38.    As a result of the aforesaid violations of the Truth and Lending Act and Regulation Z, pursuant to, 15 U.S.C. 1640, and 15 U.S.C. 1635 this Honorable Court should declare that Indy Mac must follow the Rescission process defined in Regulation Z 226. 23 and that Indy Mac is liable to Plaintiffs for: (A) Rescission of the Transaction; (B) Termination of any security interest in Plaintiff's property created under the Transaction; (C) Return of any money or property given by the Plaintiffs to anyone, including Indy Mac, in connection with the Transaction; (D) Forfeiture of return of loan proceeds; (E) Twice the amount financed; (F) Statutory damages not less than $200 nor more than $2,000; (G) Actual damages to be determined at trial; and (H) Reasonable attorneys fees and costs.

### SECOND CAUSE OF ACTION
### (MAINE'S UNFAIR AND DECEPTIVE TRADE PRACTICE ACT)

39.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32 and 34-38, above, with the full force and effect as if set forth fully herein.

40.    Western Thrift & Loan and Mikhail are subject to Maine's Unfair and Deceptive Trade Practices Act, 5 M.R.S.A. § 207.

41.    In the course of the Transaction, Western Thrift & Loan and Mikhail violated 5

      M.R.S.A. § 207 by, *inter alia,* receiving a Yield Spread Premium Fee of $6,989.00 after representing to Plaintiffs that the transaction would involve no brokers' fees, by willfully misleading Plaintiffs on the true cost of their credit, by willfully misleading Plaintiffs on the terms of the loan, and by willfully failing to disclose the effects of the Yield Spread Premium Fee over the life of the loan.

42. As a result of the aforesaid violations of Maine's Unfair and Deceptive Trade Practice Act, Western Thrift & Loan and Mikhail are liable to Plaintiffs for: (A) Actual damages caused by the said wrongful acts; (B) Restitution; and (C) Reasonable attorneys fees and costs.

### THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

43. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32, 34-38 and 40-42, above, with the full force and effect as if set forth fully herein.

44. At all times mentioned in this Complaint, Western Thrift & Loan and Mikhail were subject to fiduciary duties as brokers for Plaintiffs.

45. Western Thrift & Loan and Mikhail breached their fiduciary duties owed to Plaintiffs in a number of respects including, without limitation upon the generality of the foregoing, the following: (A) Failing to disclose the effects of the Yield Spread Premium fee; (B) Failing to insure that Plaintiffs received all material disclosures required by law in a clear and conspicuous manner; (C) receiving a fee that was not part of the original agreement between them; and (D) inducing Plaintiffs into a transaction that was contrary to their interests and needs.

46. As a result of the foregoing breaches of fiduciary duties, Plaintiffs have suffered economic detriment and damage including, without limitation upon the generality of the foregoing, that Plaintiffs could have entered into a more favorable consumer credit transaction or stayed in their original fixed rate loan of 6%.

47. As a result of the aforesaid breaches of fudiciary duties, Defendants Western Thrift & Loan and Mikhail are liable to Plaintiffs for their actual damages caused by the said wrongful acts.

## FOURTH CAUSE OF ACTION
### (FRAUD)

48. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32, 34-38, 40-42 and 44-47, above, with the full force and effect as if set forth fully herein.

49. Defendants Western Thrift & Loan and Mikhail misrepresented the terms and circumstances of the Transaction with foreknowledge of the falsity of the misrepresentations, with the intention and purpose that Plaintiffs rely upon the said misrepresentations to their detriment.

50. Those misrepresentations included, without limitation upon the generality of the foregoing and further to the misrepresentations identified hereinabove, the actual terms of the subject loan; that Plaintiffs could in fact obtain a one-percent loan that could be paid off in twelve to fifteen years; that there was no brokers' fee in the Transaction and that Plaintiffs could afford a loan of this size and type.

51. Plaintiffs did rely upon the said Defendants' misrepresentations, to their detriment.

52. Plaintiffs were damaged thereby.

53. As a result of the foregoing fraud, Defendants Western Thrift & Loan and Mikhail are liable to Plaintiffs for their actual damages caused by the said wrongful acts.

## FIFTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATIONS)

54. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32, 34-38, 40-42, 44-47 and 49-53, above, with the full force and effect as if set forth fully herein.

55. Defendants Western Thrift & Loan and Mikhail acted as an agent for Plaintiffs and maintained at all times relevant hereto a duty of due care in its dealings with Plaintiffs.

56. Defendants' misrepresentations, as detailed above, were violative of Defendants' aforesaid duty of due care and were negligent.

57. As a result of the foregoing negligent misrepresentations, Defendants Western Thrift & Loan and Mikhail are liable to Plaintiffs for their actual damages caused by the said wrongful acts.

## SIXTH CAUSE OF ACTION
### (MALICE)

58. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1-32, 34-38, 40-42, 44-47, 49-53 and 55-57, above, with the full force and effect as if set forth fully herein.

59. Defendants' actions and omissions as set forth above are the product of malice

towards Plaintiffs or are of such a nature and character that malice can be inferred therefrom, as a matter of law.

**Wherefore**, Plaintiffs Joseph Darling and Roxanne Darling pray:

(A) For Judgment in their favor and against Defendants with respect to each Cause of Action herein;

(B) For an Order or Orders that Defendant IndyMac Bank F.S.B. take all actions necessary to terminate any security interest in Plaintiffs property created under the Transaction and declaring all such security interests void, including the mortgage-related security interests; for an Order or Orders enjoining Defendant IndyMac Bank F.S.B. during the pendency of this action and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings upon Plaintiffs' property, from recording any deeds or mortgages regarding the said property or from otherwise taking any steps to deprive Plaintiffs of ownership of that property, if any; for an Order or Orders that Plaintiffs have no duty to tender insofar as IndyMac Bank F.S.B. has failed to respond to Plaintiffs' aforesaid notice of rescission or, in the alternative, if and to the extent that tender is required to be given, to that IndyMac Bank F.S.B. accept tender on reasonable terms and over a reasonable period of time;

(C) For their actual damages as are reasonable in the premises;

(D) For statutory damages for Defendants' violations of TILA and otherwise as set forth above;

(E) For restitution damages;

(F) For punitive and exemplary damages;

(G) For their costs and reasonable attorneys fees;

(H) For their interest; and

(I) For such, further and additional relief as the Court deems just and appropriate.


Dated at Lewiston, Maine this 29th  day of
November, 2006.

                                        /s/ David J. Van Dyke, Esq.

                                        Hornblower Lynch Rabasco & Van Dyke P.A.
                                        261 Ash Street
                                        P O Box 116
                                        Lewiston, ME 04243-0116
                                        *Attorney for Plaintiffs*