UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH and ROXANNE DARLING,           ) | |
|                                                                    ) | |
| Plaintiffs,           ) | |
|                                                                    ) | |
| v.                                                              ) | Civ. No. 06-123-B-W |
|                                                                    ) | |
| INDYMAC BANK, F.S.B., and             ) | |
| WESTERN THRIFT & LOAN,                 ) | |
|                                                                    ) | |
| Defendants.         ) | |

**MEMORANDUM OF DECISION ON MOTION TO
EXCLUDE OR LIMIT EXPERT TESTIMONY**

The plaintiffs, Joseph and Roxanne Darling, have designated TJ Henderson, a consumer advocate and self-styled "auditor" of consumer mortgage loans, to offer expert testimony to the effect that, among other things, the Darlings "are unsophisticated borrowers [who] had no idea what was taking place" with a loan issued by defendant IndyMac Bank and brokered by co-defendant Western Thrift & Loan, that the loan in question was fraudulent and predatory due to the way in which the defendants made, or failed to make, required disclosures in various closing documents and other communications, and that these circumstances give rise to "a continuing right to rescind the loan transaction." (Aff. of TJ Henderson ¶¶ 1-3, Doc. No. 18-2.)  In addition to these opinions, Mr. Henderson would testify that the defendants' conduct violated a number of state and federal laws.  (Id. ¶ 3.)  The defendants ask the Court to exclude any such testimony on the grounds that the opinions impermissibly intrude upon the Court's duty to instruct on the law, the designated expert is not qualified to testify about the standard

of care that applies to mortgage lenders and brokers, the opinions impermissibly and unhelpfully characterize the plaintiffs' mental capacity, and the designation fails to fully comply with Rule 26(a)(2)(B).  (Mot. to Exclude, Doc. No. 18.)  The motion is GRANTED IN PART.

## Background

The Darlings assert that they have filed their lawsuit under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*[1] ("TILA") in order to rescind a consumer credit transaction, void the IndyMac Bank's security interest in their home, and recover statutory damages, fees and costs based on alleged violations of the TILA and Regulation Z, 12 C.F.R. § 226.  They have joined the mortgage loan broker Western Thrift & Loan as an additional defendant to pursue claims of unfair and deceptive business practices, breach of fiduciary duty, fraud, and negligent misrepresentation arising from statements allegedly made by a Western agent[2] in order to induce a closing on the mortgage loan.  (Am. Compl., Doc. No. 3.)

Discovery in this case has essentially proceeded without incident.  There have been two limited extensions to date and discovery remains open until December 31 for the limited purpose of conducting certain depositions.  On June 12, 2007, the Darlings timely designated TJ Henderson as an expert witness.  According to Mr. Henderson's resume, he appears to be someone who has made a career out of consumer advocacy related to the TILA.  He does not appear to have a law degree, though his resume includes as relevant experience the "practice of law" in certain county courts in the State

---

[1] Components of the Truth in Lending Act are distributed throughout the United States Code.  The sections cited here, as cited by the Darlings in their pleadings, refer to the TILA's consumer credit cost disclosure provisions.

[2] The Darlings originally named the agent as an additional defendant but have since voluntarily dismissed the claims against him.  (Voluntary Dismissal, Doc. No. 17.)

of Washington. Mr. Henderson also reports years of unspecified education in consumer protection law and recent professional experience as an auditor (presumably unlicensed as no licenses are disclosed) who has worked to combat predatory lending on behalf of companies named Co3m, Premier Mortgage Auditing, Consumer Guardian, and Advocates for Justice. Mr. Henderson identifies his current position as president for Consumer Guardian and also as someone who provides paralegal services, including mortgage auditing services. Business tools at his disposal include West Law and a consumer library made available by the National Consumer Law Center. (See TJ Henderson Resume, Doc. No. 18-2 at 4-5.)

The Darlings also attached to their disclosure an affidavit prepared by TJ Henderson in support of their claims. (TJ Henderson Aff, Doc. No. 18-2 at 6-10.) The affidavit recites a number of legal conclusions or characterizations concerning the Darlings and their mortgage transaction. These include the following statements:

1. That the Darlings "are unsophisticated borrowers" (id. ¶ 2);

2. That, "based upon my audit and study of the [closing] documents . . ., the Darlings had no idea what was taking place with the loan or that they could reasonably determine what the loan cost or finance charge would consist of," which is described as an "unreasonable tactic" (id.);

3. That the HUD-1 statement issued by IndyMac was "deceiving" because of the way it characterized a yield spread premium paid to Western as a "Broker Comp." to be paid from the Darlings funds at closing and because of the location on the form where this reference was made (id.);

4. That a second group of disclosure forms were issued without including a new notice of the Darlings' right to cancel (id.);

5. That these and other irregularities or misstatements give rise to "a continuing right to rescind the loan transaction" (id.);

3

6. That due to his training and experience TJ Henderson was able to perform a "proper audit" which disclosed the following additional violations of law:

   a. failure to make all disclosures required by the TILA, including a failure to disclose the existence of yield spread premium (YSP) or to explain its significance and a failure to make disclosures required by 12 C.F.R. §§ 226.17, 226.18 and 226.19;

   b. an overstatement of the loan's annual percentage rate, referencing 12 C.F.R. § 226.22;

   c. an understatement of the loan's finance charge, referencing 12 C.F.R. § 226.18(d)(1)(i);

   d. failure to inform the Darlings where to find the appropriate contract documents and clause for information about non-payment, default, and the lender's right to accelerate payments, referencing 12 C.F.R. § 226.18(p); and

   e. failure to provide the required HUD booklet on loans, referencing 12 U.S.C. § 2406 *et seq.*

   (id. ¶ 3);

7. That, in his opinion, "this loan is fraudulent and consists of unjust enrichment and is predatory in nature (id. ¶ 3(i)); and, finally;

8. That these violations expose the lender to severe penalties, which he then characterizes (id. ¶ 5).

### Discussion

Western challenges TJ Henderson's proposed testimony on Rule 26 and Rule 702 grounds. (Mot. to Exclude, Doc. No. 18.) I address the Civil Rules issue first and then turn to the evidentiary challenge.

**A.     Rule 26 of the Federal Rules of Evidence**

Western argues that Mr. Henderson's testimony should be excluded because it "consists almost entirely of unsupported legal conclusions that merely advocate the

4

positions of his retainers," without articulating any industry standards or other reasons in support of his conclusions. (Mot. to Exclude at 12.) Western also notes that the Darlings failed to disclose the expert compensation they are providing to Mr. Henderson. (Id.) Rule 26 and the Court's scheduling order require that an expert disclosure set forth a "complete statement of all opinions . . . and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B); Scheduling Order at 2, Doc. No. 13. Both the Rule and the scheduling order also call for a disclosure of, among other things, the compensation to be paid to the expert for his or her work and testimony.

In regard to Mr. Henderson's compensation, the Darlings report that they made no disclosure because they had engaged and paid Mr. Henderson to conduct an audit of their mortgage loan prior to commencing this litigation, that no fee has been requested for the Henderson affidavit that comprises Mr. Henderson's "report" because it is just a restatement of his audit, and that the defendants have not deposed Mr. Henderson so there has been no occasion to determine what compensation he would require for services as an expert witness. (Pl.'s Opposition at 4, Doc. No. 23.) Although this manner of proceeding is unorthodox, I can discern no prejudice to the defendants from the mere fact that they do not yet know what, if any, compensation Mr. Henderson will receive for his litigation-related services. This failure of disclosure does not independently warrant the exclusion of Mr. Henderson's opinions. The Darlings are required, however, to make a supplemental disclosure setting forth the terms of Mr. Henderson's compensation as soon as they are established, or by the close of discovery, whichever occurs sooner.

The second aspect of Western's Rule 26 argument is that Mr. Henderson's opinions should be excluded because the Darlings have not, in Western's view, disclosed

5

the basis and reasons for the opinions, only "unsupported legal conclusions." (Mot. to Exclude at 12.) I conclude that this issue is best addressed as an evidentiary matter under Rule 702 of the Federal Rules of Evidence, rather than as a disclosure matter under Rule 26. The Darlings have made a disclosure of Mr. Henderson's opinions and the reasons he offers for them. To the extent the Darlings are able to demonstrate that the basis and reasons they offer satisfy the standards of Rule 702 they will to that same extent meet the disclosure requirement of Rule 26.

**B.   Rule 702 of the Federal Rules of Evidence**

Pursuant to Rule 702 of the Federal Rules of Evidence:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court discussed the gate-keeping role federal judges play under Rule 702 in screening unreliable expert opinion from introduction in evidence. Id. at 597. That role is "to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002). The proponent of the expert opinion must demonstrate its reliability, but need not prove that the opinion is correct. Id. at 63. "Once a trial judge determines the reliability of the expert's methodology and the validity of his reasoning, the expert should be permitted to testify as to inferences and conclusions he draws from it and any flaws in his opinion may be exposed through cross-examination or competing expert testimony." Brown v. Wal-Mart

Stores, Inc., 402 F. Supp. 2d 303, 308 (D. Me. 2005). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. It has been said that, ultimately, the Court must determine simply whether "the testimony of the expert would be helpful to the jury in resolving a fact in issue." Cipollone v. Yale Indus. Prods., 202 F.3d 376, 380 (1st Cir. 2000).

1.  *Legal conclusions cannot be countenanced, but testimony concerning regulatory compliance should be facilitated rather than barred where regulatory compliance is at the heart of the case and the plaintiffs are not independently qualified to discuss the regulatory framework.*

Western's overarching theme is that the proposed opinion testimony is riddled with statements of legal standards and legal conclusions that are not really opinions at all. (Mot. to Exclude, *passim*.) It is the Court's duty, naturally, to instruct the jury[3] concerning the applicable legal standards that govern this action. Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99-100 (1st Cir. 1997). It will fall to the fact witnesses to provide the jury with evidence of the facts and circumstances that gave rise to this action. The question, then, is whether Mr. Henderson, by dint of his mortgage auditing experience and any specialized knowledge he possesses, might be able to help the jury better understand the evidence to determine a fact in issue. Id. at 100. The Darlings assert in their opposition that Mr. Henderson will be able to articulate "various improprieties with the loan/mortgage transaction and documentation," listing his

---

[3]  Because the Darlings' plea for relief requests more than equitable remedies, there is a legal component to their TILA claim that is properly submitted to a jury in light of their jury demand. See Franklin v. Hartland Mortgage Ctrs., Inc., No. 01 C 2041, 2001 U.S. Dist. LEXIS 24238 (N.D. Ill. June 18, 2001) (order on motion to strike jury demand) (concluding in a TILA action that the plaintiff had the right to have his claim for statutory damages submitted to the jury and quoting Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 510 (1959)) ("[W]hen legal and equitable claims are joined in one action, absent exceptional circumstances, a litigant has a right to have the issues common to the legal and equitable claims tried first to a jury")). Additionally, the claims against Western are traditional tort claims appropriately tried to a jury.

7

observations that certain required documentation was missing and that the APR and finance charge calculations were erroneous. (Pls.' Opposition at 1-2.) However, they acknowledge the appearance of a problem, noting, "if and to the extent that Mr. Henderson has gone beyond those factual observations and opined that same represent violation(s) of law, his testimony can be easily limited/prescribed at trial to conform to an appropriate scope." (Id. at 2.) I fail to understand why this particular problem should not be addressed ahead of trial. Mr. Henderson should not be permitted to take the witness stand and simply state such things as "this loan is fraudulent and consists of unjust enrichment and is predatory in nature." (TJ Henderson Aff. ¶ 3(i).) However, in fairness, it does not appear likely that that would be the extent of his testimony. Although Mr. Henderson's affidavit is peppered with recitations of legal conclusions, his material opinions are really quite straightforward: (1) certain required TILA disclosures and/or documents were missing and (2) certain required disclosures were false. He is able to draw the first conclusion based on an audit of the closing documents. He has articulated which documents were missing. He is able to draw the second conclusion based on independent calculations. It is not difficult to conclude that the typical layperson would be unable to review a set of mortgage loan closing documents to assess whether a particular, required document was present or not. Nor is it difficult to imagine that the typical layperson would not be familiar with calculating finance charges and annual percentage rates. In other words, there does not appear to be anything inherently wrong with having an expert state that certain required documents were missing from the closing documents of a transaction or that certain calculations were erroneous, without straying into the territory of legal conclusions such as that the loan is "unjust" or

8

"predatory," or that it gives rise to liability or justifies any particular remedy. Thus, I conclude that the "legal conclusion" argument for exclusion does not entirely undermine Mr. Henderson's audit or his opinions as to regulatory compliance. It does, however, call for a limitation to be placed on Mr. Henderson's testimony. There is no reason apparent in this case why Mr. Henderson should need to tell the jury what the penalties of noncompliance are, what remedies are appropriate (such as contract rescission, which is an equitable remedy reserved to the Court, in any event), that the circumstances demonstrate unjust enrichment, predatory lending or fraud. Those particular opinions are hereby excluded on the ground that they are inappropriate legal conclusions and, as such, would not really help the jury make sense of the facts.

There remains the matter of how to best address testimony to the effect that certain conduct was "in violation of TILA" or other federal or state laws and regulations. The issue of how to handle testimony concerning regulatory compliance is not as easy to resolve as either party suggests. In this case, although an expert might need to speak in terms of the TILA's regulatory framework in order to discuss regulatory compliance, that is not necessarily the same thing as instructing the jury on issues of law or merely reciting legal conclusions. On the other hand, for testimony about noncompliance to have meaning there is a need to convey to the fact finder that there exists a regulatory framework that mandates compliance. Probably the most appropriate way to handle a situation like this one is not to preclude the testimony altogether, but to provide the jury with preliminary instructions concerning the regulatory framework and require the expert to couch his compliance testimony in terms of the Court's instructions on the law, rather than in terms of his private characterizations of the law. <u>See, e.g.</u>, <u>United States v.</u>

9

Caputo, 382 F. Supp. 2d 1045, 1053 (N.D. Ill. 2005) (taking this approach in a criminal case involving FDA regulatory "enforcement policies"). Alternatively, the Court could leave for trial the task of drawing the "fine" distinction between proper expert testimony and legal conclusions, to avoid setting an over-exacting standard in a case that appears to turn almost entirely on regulatory compliance. See, e.g., TC Sys. Inc. v. Town of Colonie, 213 F. Supp. 2d 171, 181-82 (N.D. N.Y. 2002) ("[T]he Court is reluctant to preclude all testimony regarding FCC criteria at this early stage. If a proper foundation is laid and Kravtin can establish a nexus between the FCC criteria and the facts here, her testimony may be appropriate.").

2.  *The Darlings' expert disclosure is sufficient to qualify Mr. Henderson to testify about regulatory compliance matters, but not about the customs and practices of mortgage loan brokers and lenders.*

Western's next argument is that Henderson should not be permitted to testify about any deviation from customary practice because he is not a broker with experience in mortgage lending or any professional license in that commercial practice area. (Mot. to Exclude at 9-10.) The Darlings respond that it is "premature" for the Court to conclude that Mr. Henderson lacks the qualifications "to render opinions describing the applicable yield rate, actual and stated percentage interest rates and the presence of hidden and undisclosed charges." (Pls.' Opposition at 3.) They say that they are not required to retain a "blue-ribbon practitioner," quoting United States v. Malone, 453 F.3d 68, 71 (1st Cir 2006). (Id. at 3-4.) They do not expand upon the qualifications set forth in Mr. Henderson's resume and affidavit.

Based on a review of the expert disclosure materials, Mr. Henderson has been obtaining education in law and consumer protection since 1989, practiced law for five years in certain county courts in Washington, participated in at least eight seminars and

10

workshops on the TILA between 2002 and 2006, and has been active with four "companies" in organized efforts to combat predatory lending. The companies in question are Co3m, Premier Mortgage Auditing, Advocates for Justice, and Consumer Guardian. Henderson is currently the president and owner of Consumer Guardian. Mr. Henderson's affidavit indicates that he has been "in the mortgage auditing business for 9 years and legal industry for the past 15 years." (TJ Henderson Aff. at 1.) Henderson's affidavit does not otherwise elaborate on any of the qualifications sketched out in his resume, such as by better describing the work performed by the companies he has worked for or the type of legal work he used to perform in Washington.

An expert's qualifications, like other issues addressed to the admissibility of an expert's opinions, "should be established by a preponderance of proof." Daubert, 509 U.S. at 592 n.10. The proponent of the challenged evidence carries the burden of proof. The proponent must not assume that an evidentiary hearing will be held; the Court has the discretion to decide the motion on briefs and with reference to expert reports, depositions and affidavits on record. United States v. Diaz, 300 F.3d 66, 73-74 (1st Cir. 2002).

The trouble here is that the Darlings have designated an unconventional expert and given short shrift to Western's arguments that their designee has questionable qualifications. The fact that Mr. Henderson is an unconventional expert is not a bar in itself, but there needs to be some reassurance here that Mr. Henderson's specific training and experience make him a suitable person to educate the jury about issues of fact. Instead, the Darlings rest on Mr. Henderson's resume and affidavit and casually argue that the record does not in its present state prove he is *not* qualified, partly because

11

Western has not deposed Mr. Henderson. (Pls.' Opposition at 3.) I conclude on this record that Mr. Henderson's qualifications to address the specific issue flagged here by Western, i.e., the customs and practices of mortgage lenders and brokers, are not adequately established. That does not mean, however, that Mr. Henderson is unqualified to serve as an expert witness regarding compliance with the TILA regulatory framework and related consumer law. Mr. Henderson has made a practice of educating himself on consumer law matters, including the requirements of the TILA, and he has worked for several years consulting with borrowers to determine whether the mortgage loans they have entered into have complied with that law and others. Thus, he appears to be suited to the task of helping to shepherd the Darlings' regulatory compliance claims through the trial process, provided he does so within appropriate parameters set by the Court to prevent him from purporting to state the law to the jury.[4] He may not, however, speak to what is customary practice among mortgage lenders and brokers, only to what is required by the regulatory framework.

3. *Mr. Henderson's views concerning the Darlings' relative sophistication and their understanding of the terms of the loan are unreliable and unhelpful and must be excluded.*

Western challenges Mr. Henderson's basis and qualifications to offer opinions about the Darlings' level of sophistication or their level of knowledge about the terms of the transaction they entered into. (Mot. to Exclude at 11.) The Darlings do not even attempt to preserve these facets of their expert disclosure. As there is no apparent basis

---

[4] In its reply, Western argues for the first time that Mr. Henderson's percentage rate calculations and finance charge calculations should be excluded because there are merely factual matters for which no expert testimony is needed or which should be presented by an accountant. (Def.'s Reply at 1, Doc. No. 24.) I disagree with Western's contentions. Mr. Henderson discloses that performing these calculations is part of his auditing function and it seems plain that the average layperson is not accustomed to computing annual percentage rates or even finance charges. Having someone other than the plaintiffs articulate the process is apt to save time at trial and prove beneficial to the jury.

12

to support a finding that Mr. Henderson is qualified to testify—or possesses specialized knowledge enabling him to testify—about the Darlings' level of sophistication or their understanding of the loan's terms, these opinions are excluded. Mr. Henderson may discuss what he considers to be noncompliant disclosures without having to opine that the Darlings were actually misled.

## Conclusion

For the reasons stated above, Western's motion to exclude the testimony of TJ Henderson is GRANTED, IN PART. Mr. Henderson is precluded from testifying about the penalties and remedies available in cases of regulatory noncompliance. He is also precluded from testifying that the circumstances of this case demonstrate unjust enrichment, predatory lending or fraud. Additionally, Mr. Henderson is precluded from testifying about the customary practices observed by mortgage lenders and brokers. Finally, Mr. Henderson is precluded from characterizing the Darlings' level of sophistication or their level of knowledge about the terms of the transaction they entered into.

## **CERTIFICATE**

Any objections to this Order shall be filed in accordance with Fed.R.Civ. P. 72.

*So Ordered.*

December 3, 2007                              /s/ Margaret J. Kravchuk
                                              U.S. Magistrate Judge

13